## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MARTIN AKUSOBA, *et al.* | : | |
| | : | |
| *Plaintiffs,* | : | CASE NO. 2:25-cv-1515 |
| | : | |
| v. | : | |
| | : | JUDGE: James Graham |
| PRIME HEALTHCARE SERVICES, INC.; | : | |
| PRIME HEALTHCARE FOUNDATION INC.; | : | |
| PRIME HEALTHCARE FOUNDATION – | : | |
| COSHOCTON LLC d/b/a COSHOCTON REGIONAL | : | |
| MEDICAL CENTER; | : | |
| | : | |
| AND | : | |
| | : | |
| PREM REDDY | : | |
| | : | |
| *Defendants.* | : | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF RELEVANT FACTS................................................................ 1

III.   LEGAL STANDARD ......................................................................................... 4

IV.   ARGUMENT ...................................................................................................... 4

   A.   The Amended Complaint Contains Well-Pled Allegations That Establish A Claim Under the PPA and O.R.C. § 2307.60. ........................................................................... 4

      1.   The Amended Complaint Plainly Establishes the Defendants Were Plaintiffs' Employers or Joint Employers Under the PPA........................................................ 6

      2.   The Amended Complaint Plausibly Alleges Unpaid Wages That Are Not Subject to Any Legitimate Contest. ........................................................................................ 11

   B.   Plaintiffs Adequately Pled a Claim Under O.R.C. § 2307.60............................. 12

   C.   Plaintiffs Have Adequately Pled An Implied-In-Fact Contract. ....................... 13

   D.   Plaintiffs Have Adequately Pled A Claim for Unjust Enrichment. ................... 15

V.    CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Case(s)**                                                                                     **Page(s)**

*Almaraz v. State Farm Fire & Cas. Co.*,
    2025 WL 1177535 (E.D. Mich. Apr. 23, 2025)................................................................15

*Andersons, Inc. v. Consol, Inc.*,
    348 F.3d 496, 502 (6th Cir. 2003) ...................................................................................16

*Arp v. Hohla & Wyss Enters., LLC*,
    2020 WL 6498956 (S.D. Ohio Nov. 5, 2020)....................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................1, 4

*Barfield v. New York City Health & Hosps. Corp.*,
    537 F.3d 132 (2d Cir. 2008)............................................................................................10

*Benaissa v. Salinar Reg. Health Ctr., Inc.*,
    2021 WL 571003 (10th Cir. Dec. 2, 2021) ......................................................................10

*Bowman v. MetroHealth Sys.*,
    2025 WL 3267906 (N.D. Ohio Nov. 24, 2025) ..........................................................12, 13

*Bradford v. Prosoft, LLC*,
    2017 WL 1458201 (W.D. KY 2017) ................................................................................8

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016)..........................................................................................................5

*Carrier Corp. v. NLRB*,
    768 F.2d 778 (6th Cir. 1985) ............................................................................................9

*Comer v. Directv, LLC*,
    2016 WL 853027 (S.D. Ohio Mar. 4, 2016) ..............................................................1, 4, 7

*Doucette v. DIRECTV, Inc.*,
    2015 WL 2373271 (W.D. Tenn. May 18, 2015) ...........................................................7, 8

*Eberhard v. Old Republic Nat'l Title Ins. Co.*,
    2013 WL 12293449 (N.D. Ohio Sept. 13, 2013)............................................................16

*Evans v. Rizzo*,
    1996 WL 479565 (Ohio Ct. App. 1996) .........................................................................13

*Garner v. Cleveland Clinic Found.*,
    735 F. Supp. 3d 867 (N.D. Ohio 2024)...........................................................................12

*Grace v. USCAR*,
   521 F.3d 655 (6th Cir. 2008) ........................................................................9

*Harley v. Dayton Computer Supply*,
   106 F. Supp. 2d 976 (S.D. Ohio 1999) .......................................................17

*Heard v. Nielson*,
   2017 WL 2426683 (S.D. Ohio June 2, 2017) ............................................6, 8

*Hensley Mfg. v. ProPride, Inc.*,
   579 F.3d 603, 613 (6th Cir. 2009) ...........................................................6, 11

*Keeton v. Time Warner Cable*,
   2010 WL 2076813 (S.D. Ohio May 24, 2010) ...........................................8, 9

*Merchants Advance, L.L.C. v. Boukzam*,
   2008-Ohio-4860, 2008 WL 4356102 (Sept. 25, 2008) .................................15

*Monahan v. Smyth Auto., Inc.*,
   2011 WL 379129 (S.D. Ohio Feb. 2, 2011) ...................................................6

*N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc.*,
   691 F.2d 1117 (3d Cir. 1982) ....................................................................8, 9

*N.L.R.B. v. Centra, Inc.*,
   954 F.2d 366 (6th Cir. 1992) .........................................................................9

*O'Brien v. Ed Donnelly Enters., Inc.*,
   575 F.3d 567 (6th Cir. 2009) .........................................................................5

*Parks v. Cent. USA Wireless, LLC*,
   2019 WL 4743648 (S.D. Ohio Sept. 29, 2019) ..............................................8

*Reisenfeld & Co. v. The Network Group, Inc.*
   277 F.3d 856 (6th Cir. 2002) .......................................................................17

*Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*,
   974 F.3d 756 (6th Cir. 2020) .........................................................................4

*Salamon v. Our Lady of Victory Hosp.*,
   1999 WL 955513 (W.D.N.Y. Oct. 5, 1999) .................................................10

*Smith v. Loc. Cantina, LLC*,
   2022 WL 1183325 (S.D. Ohio Apr. 19, 2022) ...............................................5

*Terex Corp. v. Grim Welding Co.*,
   58 Ohio App. 3d 80 (Ohio Ct. App. 1989) ...................................................13

iii

*United Nat'l Ins. Co. v. SST Fitnesss Corp.,*
    309 F.3d 914 (6th Cir. 2002) ........................................................................13

*U.S. Diamond & Gold v. Julius Klein Diamonds LLC*,
    2008 WL 11352603 (S.D. Ohio June 11, 2008) ...............................................16

*Williams v. City of Columbu*s,
    892 F. Supp. 2d 918 (S.D. Ohio 2012) ...........................................................9

**Rules**
Rule 12(b)(6) ......................................................................................................11

**Statues**
Fair Labor Standards Act, 29 U.S.C. § 206 ........................................................4
O.R.C. § 4113.15(D)(4) ......................................................................................6
O.R.C. § 2307.60 ..............................................................................................12
Ohio Revised Code § 2307.60(A).......................................................................12
**Treatises**
*Restatement Restitution* § 107(2) (1937) ....................................................13, 14

iv

I. **INTRODUCTION**

Defendants' motion asks this Court to find, at the pleading stage, that their use of a staffing agency allows them to circumvent responsibility for paying the physicians who kept their hospitals running. However, applying the correct legal standard for a motion to dismiss, which is plausibility, dismissal is not appropriate. This Court cannot now find that, as a matter of law, Defendants may simply retain the financial benefits of Plaintiffs' services without paying their wages. To the contrary, remedial wage legislation is designed to ensure that employer obligations are determined not based on corporate structures and formalisms, such as Defendants' choice to indirectly staff through a now insolvent entity, but rather on which entities and individuals actually controlled Plaintiffs' work and "economic reality." *Comer v. Directv, LLC*, 2016 WL 853027, at *7 (S.D. Ohio Mar. 4, 2016) (J. Graham) ("A company's self-serving label of 'independent contractor" means little to the Court's analysis of employment; the Court must look at the 'economic reality' of the relationship … "). As explained below, Plaintiffs' Amended Complaint adequately pleads that Defendants maintained sufficient control over Plaintiffs' work to assert claims for violation of the Ohio Prompt Pay Act ("PPA"), breach of implied-in-fact contract, and unjust enrichment/quantum meruit.

II. **STATEMENT OF RELEVANT FACTS**

The following facts must be accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

Plaintiffs are physicians who worked for six to eight weeks without receiving their pay in the Emergency Department of Prime Healthcare Foundation – Coshocton LLC d/b/a Coshocton Regional Medical Center ("Coshocton Hospital"), which is controlled by Defendant Prime Healthcare Services, Inc. ("PHSI") and Defendant Prime Healthcare Foundation, Inc. ("PHFI") (together, the "Prime Defendants") as well as Defendant Prem Reddy ("Reddy").

The Prime Defendants contracted with Emergency Department Management Services

1

companies ("EDMS") to provide doctors and healthcare providers to staff their emergency rooms including at Coshocton Hospital. (Am. Compl. ¶ 1.) Plaintiffs, in turn, were required to contract through EDMS staffing companies in order to work for Defendants. (*Id.* at ¶¶ 1, 67-74.) The staffing company the Prime Defendants used in the Fall of 2024 was National Emergency Services Health (together with its subsidiaries and affiliates, including HLES of Ohio, Inc., "NES"), which is now bankrupt and judgment-proof. (*Id.* ¶¶ 1-8.) The Prime Defendants dictated the terms of the arrangement with NES, and the Prime-owned hospitals carried out Prime's directives by contracting with an NES subsidiary for staffing. (*Id.* ¶¶ 68,73-74.)

The Prime Defendants and Reddy controlled Plaintiffs and their practice of medicine, including through the direction of their agents and implementation of uniform policies at hospitals acquired by Prime. (*Id.* ¶¶ 12, 16, 20.) Specifically, Reddy and the Prime Defendants issued directives to limit medical procedures performed by Plaintiffs, instructed Plaintiffs to use certain types of tests but not others, set protocols for how Plaintiffs should respond to patient medical events, and provided directives on when to admit patients. (*Id.* ¶¶ 39.) Hospital-level leadership at Coshocton Hospital worked to ensure that Reddy's directives were carried out, including by implementing protocols consistent with Reddy's directives. (*Id.* ¶ 42.)

Coshocton Hospital, as an agent of the Prime Defendants, retained and exercised the right to discipline and terminate ER staff, and required Plaintiffs to perform obligations outside the scope of their NES contracts, such as training physician assistant students and responding to patient issues on the floors after patients are no longer being treated in the ER. (Am. Compl. ¶¶ 43-44, 51.) Defendants also actively monitored Emergency Department utilization, and established metrics for door to room time, doctor to patient time, and CT use. (*Id.* ¶¶ 39(a), 43(b-c).) Hospital-level leadership, who were agents of Prime Defendants and Reddy, would instruct site directors

2

on how to deal with grievances about Plaintiffs, including whether to take disciplinary action up to and including discharge. (*Id.* ¶ 43(d).) Coshocton Hospital also controlled credentialling, which involved verifying a practitioner's qualifications and granting medical privileges, including who can perform specific procedures. (*Id.* ¶ 45.)

The Emergency Department at Coshocton Hospital is critical to Prime's business. (*Id.* ¶¶ 55-66.) While Plaintiffs' professional billings were assigned to NES, the Coshocton Hospital directly collected billings based on hospital services and profited from hospital admissions that enter through the Emergency Department. (*Id.*) As the sole member of Coshocton Hospital, PHFI was enriched by the revenue collected from hospital services and admissions. (Am. Compl. ¶ 64.) Given Reddy's and Prime Healthcare Services, Inc.'s ("PHSI") control over PHFI, the Prime-owned Hospitals, and their assets, Defendants Reddy and PHSI appreciated the financial and reputational benefits that flowed from Plaintiffs' services. (*Id.* ¶¶ 65-66 .)

Initially, NES made payments to Plaintiffs for their work for Defendants under the contracts. After NES started to delay payments to Plaintiffs and it became clear that NES was dealing with substantial financial difficulties, Plaintiffs continued to show up to staff the Emergency Department at Coshocton Hospital and treat patients. (*Id.* ¶¶ 4, 7.)  The Prime Defendants directed its subsidiary hospitals that contracted with NES, including Coshocton Hospital, to continue accepting Plaintiffs' services at its emergency departments but not arrange for compensating Plaintiffs for all the hours they worked. (*Id.* ¶ 119.) Plaintiffs reasonably expected to receive payment for the services they provided to Coshocton Hospital in September and October 2024. (*Id.* ¶ 130.) However, the Prime Defendants directed the Coshocton Hospital not to arrange for compensating Plaintiffs for the hours they worked during this period. (*Id.* ¶¶ 119, 131.)

### III.    LEGAL STANDARD

A plausibility standard applies to this motion, reflective of the notice pleading requirement applicable in federal court. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. at 664. A complaint satisfies the plausibility standard when the factual pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. "[W]e construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020)

### IV.    ARGUMENT

#### A.    The Amended Complaint Contains Well-Pled Allegations That Establish A Claim Under the PPA and O.R.C. § 2307.60.[1]

Defendants' arguments for dismissal of Plaintiffs' PPA claim all have the same faulty premise: an assumption that the designations in Plaintiffs' contract with NES/HLES must be true. Expounding from this premise, Defendants contend that they could not be Plaintiffs' employers and they have no knowledge, or access to information, about the amounts owed to Plaintiffs. But the entire Amended Complaint is replete with allegations that show Plaintiffs' contractual designations and provisions did not reflect the Plaintiffs' economic reality. *See Comer*, 2016 WL 853027, at *7 (explaining self-serving contractual labels mean little in employment analysis). At

---

[1] Plaintiffs intend to file a Second Amended Complaint to add claims under the Fair Labor Standards Act, 29 U.S.C. § 206 ("FLSA") and Article II, Section 34a of the Ohio Constitution for failing to pay minimum wage for hours worked. Such amendment will not alter or add to the underlying facts of the case, and is in the interest of justice because it would ensure that, even if the Court were to dismiss the PPA claim, Plaintiffs would still be statutorily entitled to recovery of attorneys' fees and costs. The FLSA and Ohio Constitution allow for recovery of attorneys' fees and costs when an employer fails to pay wages but does not use the statutory language upon which Defendants base their argument for dismissal of the PPA claim.

the most basic level, Plaintiffs' work in the Coshocton Emergency Department was not controlled by the terms of their contract with NES, but rather by the policies, protocols, and directives issued by the Prime Defendants, Reddy, and Coshocton Hospital. (Am. Compl. ¶¶ 36-54.) In addition, the Amended Complaint alleges that the terms of the contract between NES and Plaintiffs were dictated by the Prime Defendants (*Id.* ¶¶ 68, 74), so taking the allegations in the Amended Complaint as true, Defendants do have access to the information in these agreements. The Amended Complaint thus clearly permits a plausible inference that there is no contest regarding the unpaid wages.

Moreover, Defendants' arguments fail to discuss – or even cite to – prior case law of this Court (J. Graham) holding that even if Defendants could show a legitimate dispute foreclosing liquidated damages under the PPA, Plaintiffs are still entitled to pursue their actual damages under the PPA.[2] *Smith v. Loc. Cantina, LLC*, 2022 WL 1183325, at *2 (S.D. Ohio Apr. 19, 2022) (J. Graham) ("The Ohio Prompt Pay Act encompasses two types of claims… [first,] the Prompt Pay Act requires employers to timely pay wages owed for any reason, whether statutory or otherwise …. Second, the Ohio Prompt Pay Act allows an employee to recover liquidated damages, but only if the wages due are not in dispute. Defendants contend that, here, the wages at issue are in dispute.

---

[2] Defendants contend dismissal is warranted under *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), but they misconstrue that case. *O'Brien* was decided on summary judgment, and the Sixth Circuit approved of the "[t]he district court['s] examin[ation] [of] the facts surrounding each of the plaintiffs' claims." *Id.* at 578. Further, the Sixth Circuit specifically noted exceptions to its general rule, including that if "an employer were short on incoming cash, and consequently had to delay paying its employees, but conceded the employees' entitlement to payment, the employer could not reasonably argue that a 'dispute' accounted for nonpayment." *Id.* at 578; *see also id.* at 579 ("if plaintiffs had evidence that the wages were withheld even though defendants conceded or reasonably had to concede that the wages were due, such evidence—like evidence about clerical glitches or cash-flow problems—could create a triable issue of fact on the Prompt Pay Act claim.") Plaintiffs are entitled to proceed to discovery to collect evidence to shed light on this fact-sensitive inquiry.

If Defendants prevailed on this issue, the Prompt Pay Act would allow only for the recovery of unpaid wages"); *see also Arp v. Hohla & Wyss Enters., LLC*, 2020 WL 6498956, at *2 (S.D. Ohio Nov. 5, 2020) (explaining employee's ability to sue for actual damages under the PPA is distinct from liquidated damages provision); *Monahan v. Smyth Auto., Inc.*, 2011 WL 379129, at *9 (S.D. Ohio Feb. 2, 2011) ("Section (B), the liquidated damages provision, in no way prevents Plaintiffs from pursuing their 4113.15 claim against Defendant. Indeed, [d]efendant's argument that a dispute about wages precludes a suit under 4113.15 would render 4113.15 impotent because any suit under 4113.15 necessarily means that a dispute about wages exists.").

Moreover, to the extent Defendants now claim in their briefing that wages are in dispute, such representations cannot form the basis for granting a motion to dismiss, which must be based only on the allegations in the Amended Complaint and its attachments. *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint.").

For these reasons, and those set forth in greater detail *infra*, the Court should deny Defendants' motion to dismiss the PPA claim in Count I of the Amended Complaint.

### 1. The Amended Complaint Plainly Establishes the Defendants Were Plaintiffs' Employers or Joint Employers Under the PPA.

O.R.C. § 4113.15(D)(4) defines the term "employer" broadly to include "an individual, firm, partnership, association, or corporation …." O.R.C. § 4113.15(D)(4). In addition, Ohio wage law generally incorporates standards and principles applied under the FLSA. *See Heard v. Nielson*, 2017 WL 2426683, at *2 (S.D. Ohio June 2, 2017) (applying FLSA standards to Ohio wage law claims, including PPA claim). Under both the general test for employment relationships and the joint employment test, the allegations in the Amended Complaint are sufficient to permit a

plausible inference that Defendants owe Plaintiffs unpaid wages for running the Coshocton Emergency Department without any legitimate basis for dispute.

> a. *Each Defendant Had a Direct Employment Relationship with Plaintiffs.*

As an initial matter, the Amended Complaint includes sufficient allegations to permit the plausible inference that each Defendant, based on that particular Defendant's own conduct (including the conduct of each Defendant's agents), had an employer-employee relationship with Plaintiffs. In *Comer v. Directv, LLC*, 2016 WL 853027, at *7 (S.D. Ohio Mar. 4, 2016), the Court set out a six-factor "economic reality" test for determining whether an employment relationship exists, which requires analysis of six factors:

> 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; 5) the degree of the alleged employer's right to control the manner in which the work is performed ; and 6) whether the service rendered is an integral part of the alleged employer's business.

"No one factor is determinative, but rather a central question is the worker's economic dependence upon the business for which he is laboring." *Doucette v. DIRECTV, Inc.*, 2015 WL 2373271, at *3 (W.D. Tenn. May 18, 2015).

Here, a review of the factors supports the conclusion that Plaintiffs were employees. Plaintiffs had a long-term relationship with Coshocton Hospital. (*See, e.g.*, Am. Compl., Ex. 2 (showing many Plaintiffs contacted with HLES/NES to work at Coshocton years prior to Fall 2024.)) While the Plaintiffs are highly educated and skilled physicians, employing physicians was the nature of Defendants' business. Coshocton Hospital provided the equipment Plaintiffs needed for their work in the Emergency Department. (Am. Compl. ¶ 52.) Plaintiffs were paid hourly instead of based on the volume or types of appointments, so profit was not dependent on individual skill or efficiency. (*Id.* ¶ 53.) The services Plaintiffs rendered running the Coshocton ER were an

7

integral part of the business of both Coshocton Hospital and the Prime Defendants (which are conglomerates of hospitals). (*Id.* ¶ 55-66.) And most importantly, the Amended Complaint contains numerous factual allegations that each of the Defendants controlled the manner in which Plaintiffs practiced medicine. (*See, e.g.,* Am. Compl. ¶¶ 12-20, 36-54 (specifically alleging, for example, that Defendants issued directives to limit medical procedures performed by Plaintiffs, instructed Plaintiffs to use certain types of tests but not others, set protocols for how Plaintiffs should respond to patient medical events, provided directives on when to admit patients, and retained and exercised the right to discipline and terminate ER staff)); *see also Doucette v. DIRECTV, Inc.*, 2015 WL 2373271, at *3-4 (W.D. Tenn. May 18, 2015) (finding the "degree of control" to be the most relevant factor).

In short, applying the six-factor employment test, there is no merit to Defendants' argument that the pleadings establish that they had no employment relationship with Plaintiffs.[3]

> b. *The Amended Complaint Plausibly Alleges A Joint Employment Relationship.*

Defendants' motion glosses over the fact that the Amended Complaint also plausibly alleges that Defendants jointly employed Plaintiffs. As an initial matter, "[t]he issue of joint employment for the FLSA 'depends upon all the facts in the particular case," and the issue of joint employment is therefore ill-suited for resolution on a motion to dismiss. *See Heard v. Nielson*, 2017 WL 2426683, at *2 (S.D. Ohio June 2, 2017); *see also Keeton v. Time Warner Cable*, 2010

---

[3] To the extent Defendants argue that Defendant Reddy was not an employer, this argument is undermined by *Parks v. Cent. USA Wireless, LLC*, 2019 WL 4743648 (S.D. Ohio Sept. 29, 2019), which held that "[t]o be classified as an employer …[t]he party need only have operational control of *significant aspects* of the corporation's day to day functions." *Id.* at *4 (emphasis in original).

WL 2076813, at *2 (S.D. Ohio May 24, 2010) (the determination of "joint employer [status] is essentially a factual issue.").[4]

Moreover, the Amended Complaint plainly alleges a joint employment relationship. In deciding the issue of joint employment, the Sixth Circuit has previously considered the following factors: (1) the interrelation of operations between the companies, (2) common management, and (3) centralized control of labor relations and common ownership. *See Keeton v. Time Warner Cable, Inc.*, 2011 WL 2618926, at *7 (S.D. Ohio July 1, 2011) (applying this test in the context of the FLSA). "Not all factors must be present, however, in order for the Court to determine a joint employment relationship exists." *Id.*[5] Here, the allegations in the Amended Complaint satisfy each of the factors:

- **Interrelation of Operations Between the Parties.** Coshocton Hospital and its leadership were agents of Prime Defendants and Defendant Reddy, and they worked to ensure Reddy's directives were carried out, including though implementation of policies and protocols consistent with Reddy's directives.

---

[4] A review of the case law reinforces that the joint employer determination is highly fact-sensitive. *See Bradford v. Prosoft, LLC*, 2017 WL 1458201 at *5 (W.D. KY 2017) (finding that Plaintiff was an employee of both "employers" due to a joint employer relationship, where one entity was contracted by the other); *N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1124-25 (3d Cir. 1982) (finding a joint relationship where the employer "exerted significant control over the work of the drivers"); *Grace v. USCAR*, 521 F.3d 655, 662–63 (6th Cir. 2008) (finding joint employment in a situation where "two entities—a staffing agency and client employer—exercised some level of joint control over a common employee"); *Williams v. City of Columbus*, 892 F. Supp. 2d 918, 929 (S.D. Ohio 2012) (denying motion for summary judgment because a reasonable jury could find that the municipal court and the city were joint employers of the employee); *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985) (finding a joint employer relationship where the employer exercised "substantial day-to-day control over the employee's working conditions," consulted with the other employer "over wages and fringe benefits," and "[the employer] had the authority to reject any driver that did not meet its standards").

[5] The Sixth Circuit has also indicated that whether a joint employer relationship exists depends upon "such factors as the supervision of the employees' day to day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, in issuance of operating instructions." *N.L.R.B. v. Centra, Inc.*, 954 F.2d 366, 370 (6th Cir. 1992). Applying these factors to the instant case would also reveal a joint employment relationship. (*See* Am. Compl. ¶¶ 36-53.)

(Am. Compl ¶¶ 39-42.) With respect to NES/HLES, the Prime Defendants dictated the terms and conditions of the NES recruiting and payroll processes, and required Coshocton Hospital to contract with an NES subsidiary. (Am. Compl. ¶¶ 68, 74.) Collectively, Defendants took an active role in monitoring Emergency Department utilization, including door to room time, doctor to patient time, and CT use. (*Id.* ¶¶ 39, 43(b-c).)

- **Common Management.** Even without the corporate formality of an official ownership interest, Reddy and PHSI asserted *de facto* control over PHFI, Coshocton Hospital, and the Plaintiffs in the ER. In particular, Reddy and the Prime Defendants issued directives to limit medical procedures performed by Plaintiffs, instructed Plaintiffs to use certain types of tests but not others, set protocols for how Plaintiffs should respond to patient medical events, provided directives on when to admit patients, and required Plaintiffs to train physician assistant students, and supervise their treatment. (Am. Compl. ¶¶ 12-21, 36-54.)

- **Centralized Control of Labor Relations and Common Ownership.** Defendant Reddy would review patient encounters in detail during quarterly reviews, (*Id.* ¶ 39(a)), and hospital-level leadership would instruct site directors how to deal with grievances about practitioners, including whether to take disciplinary action up to and including discharge (*Id.* ¶ 43(d)). Coshocton Hospital also controlled hospital credentialling, which involved verifying a practitioner's qualifications and granting medical privileges, including who can perform specific procedures. (*Id.* ¶ 54.)

Taking a broader view, as required by applicable precedent, the allegations in the Amended Complaint about detailed directives set a strong factual foundation for the inference that Reddy and the Prime Defendants retained centralized control over how Plaintiffs performed their work. How else could they be empowered to dictate with such specificity the manner in which Plaintiffs practiced medicine? A holistic view of the allegations in the Amended Complaint permit a plausible inference that, since the Prime Defendants, Coshocton Hospital, and Defendant Reddy retained and exerted significant control over how Plaintiffs performed their jobs, they were Plaintiffs' joint employers.[6]

---

[6] Defendants' argument is not helped by their citations to *Benaissa v. Salinar Reg. Health Ctr., Inc.*, 2021 WL 571003 (10th Cir. Dec. 2, 2021), and *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260-63 (4th Cir. 1997). Both were decided on summary judgment after an opportunity to develop a record, and courts referencing these cases have declined to dismiss at the pleadings

### 2. The Amended Complaint Plausibly Alleges Unpaid Wages That Are Not Subject to Any Legitimate Contest.

Plaintiffs attached a chart to the Amended Complaint that includes a clear and plain calculation of unpaid wages that, based on Plaintiffs' allegations, are not plausibly in dispute. Defendants now attempt to generate a dispute by arguing that "the information needed to determine the number of hours worked and expense reimbursements are exclusively in the possession of Plaintiffs and HLES/ NES." (MTD Br. at 10-12.) However, Defendants' argument flounders because it is not based on the allegations in the Amended Complaint (which alleges Prime dictated the terms of such agreements); instead, the argument is premised on representations made in briefing. *See Hensley*, 579 F.3d at 613 (court cannot look beyond the pleading on motion to dismiss). That approach by Defendants is not permitted for a motion to dismiss under Rule 12(b)(6).

Moreover, to the extent Defendants argue that they have no idea when Plaintiffs worked at their ER, the Court need not accept such a facially implausible factual contention, especially considering the custom and practice of hospitals to maintain detailed patient care records. Such records include information on which providers saw which patients and when. Relatedly, the Amended Complaint alleges that during quarterly review meetings, Defendant Reddy personally reviewed "as many as 30 patient cases and their medical treatment records," after which he would critique the provider's actions. (Am. Compl. ¶ 39(a).) Defendants' arguments in this regard require

stage. *See, e.g., Salamon v. Our Lady of Victory Hosp.*, 1999 WL 955513, at *4 (W.D.N.Y. Oct. 5, 1999) (examining *Cilecek* but finding that "[b]ecause the plaintiff has alleged … at least a modicum of hospital control over certain aspects of [plaintiff's] practice, it cannot be said at this time that there exists no set of facts on which relief might be granted") Even at the summary judgment stage, the determination of employer status turns on the specific details of the record, rather than categorical rules for the medical industry, as Defendants suggest. *See Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) (affirming grant of summary judgment for nurse against hospital under FLSA and finding hospital and referral agency jointly employed plaintiff).

the Court to give them, rather than Plaintiffs', the benefit of reasonable inferences in deciding a Rule 12(b)(6) motion to dismiss. The Amended Complaint permits a plausible inference that Defendants had detailed information on the actions of the doctors in the Coshocton Emergency Department, well beyond the hours they were working.

Plaintiffs should be permitted to proceed to discovery to evaluate whether the Prime Defendants, Reddy, and Coshocton Hospital truly believed they had no obligation to pay the doctors who were running their ER.

### B. Plaintiffs Adequately Pled a Claim Under O.R.C. § 2307.60.

Ohio Revised Code § 2307.60(A) provides that anyone "injured by a criminal act" may recover attorneys' fees and punitive or exemplary damages in a civil action. Defendants argue that this claim must fail because (1) it is derivative to the PPA claim, which Defendants argue must be dismissed, and (2) there are no non-conclusory allegations of the Defendants engaging in willful conduct. (MTD Br. at 12.)

Defendants' first argument fails for the reasons discussed *supra* in Section IV.A.[7]

With respect to Defendants' second argument, the Amended Complaint contains allegations that permit the plausible inference that Defendants acted willfully. Specifically, the Amended Complaint alleges that "the Prime Defendants directed its subsidiary hospitals … including Coshocton Hospital, to continue accepting Plaintiffs' services … but not arrange for compensating Plaintiffs for the hours they worked." (Am. Compl. ¶ 119.) And, despite that

---

[7]Should the Court determine that dismissal of the PPA claim is warranted, Plaintiffs request that the Court permit them to bring a claim under O.R.C. § 2307.60 in a Second Amended Complaint premised on violation of the FLSA. *See supra* at n.1 (discussing intention to amend to add FLSA claim). Section 216(a) makes it a crime to willfully violate requirements under the FLSA, including the requirement to pay minimum wages to employees, and courts have permitted Plaintiffs to bring claims under O.R.C. § 2307.60 premised on this provision of the FLSA. *See, e.g., Garner v. Cleveland Clinic Found.*, 735 F. Supp. 3d 867, 881-82 (N.D. Ohio 2024).

Plaintiffs continued to show up to run the Coshocton ER and treat its patients, "[n]one of the Defendants compensated Plaintiffs for the approximately six to eight weeks of back pay Plaintiffs are owed." (*Id.* ¶ 7.) In short, the Amended Complaint includes ample allegations to support an inference that Defendants acted willfully. *See Bowman v. MetroHealth Sys.*, 2025 WL 3267906, at *10 (N.D. Ohio Nov. 24, 2025) (denying motion to dismiss where complaint alleged willful violation of timekeeping policies and explaining that "[b]ecause MetroHealth is a large, sophisticated employer, it can be inferred MetroHealth knew its policies violate the FLSA.")

## C. Plaintiffs Have Adequately Pled An Implied-In-Fact Contract.

There is no merit to Defendants' three arguments for dismissal of Count III, which asserts breach of an implied-in-fact contract against Coshocton Hospital and the Prime Defendants (but not Reddy).

First, Defendants contend that "[a]s for the Hospital, nothing in Plaintiffs' allegations shows its mutual assent to enter a compensation relationship with them," but this argument is inconsistent with the law and allegations in the Amended Complaint. (MTD Br. at 13.) Under Ohio law, a contract is implied in fact when one party renders services or furnishes materials to another party "under such circumstances that the receiving party knew, or should have known, that such services were rendered with the expectation of being paid on the basis of their reasonable worth." *Evans v. Rizzo*, No. 9-96-26, 1996 WL 479565, at *2 (Ohio Ct. App. 1996) (citing *Terex Corp. v. Grim Welding Co.*, 58 Ohio App. 3d 80, 82, (Ohio Ct. App. 1989); *see also United Nat'l Ins. Co. v. SST Fitnesss Corp.*, 309 F.3d 914, 920 (6th Cir. 2002) ("Implied in fact contracts usually occur when a party provides another party with services or materials under circumstances where a payment typically is made for the services or materials."); *see also Restatement Restitution* § 107(2) (1937) ("When a person requests another to perform services, it is ordinarily inferred that

he intends to pay for them, unless the circumstances indicate otherwise.").

Here, the Amended Complaint alleges that when it became apparent that NES encountered financial difficulties, Plaintiffs continued to show up, staff the Coshocton Emergency Department, and treat patients. (Am. Compl. ¶¶ 4-8.) Both Coshocton Hospital and the Prime Defendants accepted their services, and Plaintiffs thus had a reasonable expectation that they would be paid. (*Id.* ¶¶ 119, 130.) The Amended Complaint also alleges that Defendants imposed numerous obligations on Plaintiffs (many beyond the scope of their NES contract, such as training physician assistant students), which indicate mutual assent. (Am. Compl. ¶¶ 43-49); *see also* Restatement Restitution § 107(2). Under such circumstances, and based on the governing Ohio law, it is plausible to infer that Defendants knew, or should have known, that Plaintiffs' services of running their Emergency Department were being rendered with an expectation of payment.

Second, Defendants argue that "there is no allegation to suggest that Plaintiffs performed services on behalf of PHFI or PHSI, nor is there an allegation to suggest that consideration flowed" to these entities. (MTD Br. at 14.) However, the Prime Defendants directed the hospitals as their agents to continue accepting the Plaintiffs' services even after they were no longer being paid. (*See, e.g.,* Am. Compl. ¶ 119.) The Amended Complaint also shows how consideration flowed to PHFI and PHSI with detailed allegations on how the Hospital Defendants' Emergency Departments were integral to the Prime Defendants' regular business. (*See id.* ¶¶ 55-66.)

Third, Defendants argue that the allegation that Prime Defendants directed the Hospitals not to pay Plaintiffs is inconsistent with other allegations – *i.e.*, that NES took Plaintiffs' billings for professional services and that Coshocton Hospital began to contract directly with Plaintiffs in October 2024. (MTD Br. at 14-15.) However, the Amended Complaint also makes clear that the Prime Defendants entered into an arrangement with NES at the parent-entity level, that issues with

14

NES affected each of the Prime-owned hospitals, and that the decision of the hospitals (which are separate entities but subject to common ownership) not to provide backpay was uniform. (*See* Am. Compl. ¶¶ 7, 12, 20, 119, 130.) These allegations permit a plausible inference that the decision not to pay Plaintiffs was made by the hospitals' common controlling entity: the Prime Defendants. Plaintiffs should be entitled to discovery on this decision-making process, as such information is in the exclusive control of Defendants. *See Almaraz v. State Farm Fire & Cas. Co.*, 2025 WL 1177535, at *4 (E.D. Mich. Apr. 23, 2025) (explaining that pleading on information and belief is sufficient where the relevant evidence is exclusively within the control of opposing parties).

### D. Plaintiffs Have Adequately Pled A Claim for Unjust Enrichment.

Defendants argue that Plaintiffs' claim for unjust enrichment/quantum meruit cannot succeed for three reasons. Plaintiffs address each argument in turn.

First, Defendants posit that there was no benefit to Defendants from Plaintiffs staffing the Coshocton Emergency Department because the right to collect for their professional services was assigned to NES. (MTD Br. at 16-17.) However, it is plainly plausible to infer that having doctors work for free enriches the hospitals and their owners. Also, Plaintiffs' services were necessary for Coshocton Hospital to collect for hospital-based billings and to profit from admissions through the Emergency Department. (*See* Am. Compl. ¶¶ 55-66.) Profits from these sources flowed to Prime and Reddy. (*See id.*)[8] Moreover, unjust enrichment does not require contractual privity. S*ee*

---

[8] The Amended Complaint pleads that Reddy and PHSI, regardless of ownership status, asserted *de facto* control over PHFI, the Coshocton Emergency Department, and Plaintiffs. Consistent with this degree of control over PHFI, the Coshocton Hospital, and their assets, the Amended Complaint alleges "Defendants Reddy and Prime Healthcare Services, Inc. enjoyed the reputational and financial benefits, through their control of, and association with, the Prime Healthcare Foundation, Inc." (Am. Compl. ¶¶ 64-66, 128.) These allegations allow for the plausible inference that the benefits of Plaintiffs' services flowed not only to the Coshocton Hospital and PHFI, but also to Reddy and PHSI who asserted actual control over those assets.

*Merchants Advance, L.L.C. v. Boukzam*, 2008-Ohio-4860, 2008 WL 4356102, ¶ 32 (Sept. 25, 2008) ("[I]t is well-established that the application of an unjust enrichment action does not mandate privity between the parties. … Thus, a third party that is not a party to a contract but still benefits from that contract may be held liable for unjust enrichment.").

Second, Defendants argue that – even if a benefit were conferred – "[t]here must also be an injustice in permitting the benefit to be retained without compensation," and that here there was no such injustice because there are not sufficient allegations that Plaintiffs were misled. (MTD Br. at 18.) However, "[t]here is no requirement under Ohio law that a party must have acted improperly for an action based upon a contract implied in law to succeed." *Eberhard v. Old Republic Nat'l Title Ins. Co.*, 2013 WL 12293449, at *6 (N.D. Ohio Sept. 13, 2013). "Passive retention of a benefit is enough to trigger liability under an unjust enrichment claim where such retention is unconscionable." *Id.*; *see also U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, 2008 WL 11352603, at *15 (S.D. Ohio June 11, 2008) ("Under Ohio law, unjust enrichment occurs when an entity has passively received a benefit which it would be unconscionable for the entity to retain.").[9]

There is certainly injustice in having physicians work for free for the benefit of hospitals and their owners. The Amended Complaint alleges that, even as payment was delayed (demonstrating the financial issues of NES), Plaintiffs continued to show up for their shifts to treat patients. Plaintiffs did so with the understanding that their services were critical to patient care and to keep hospitals functioning, (Am. Compl. ¶¶ 4-7; 55-66), and with the reasonable expectation that they would be compensated for their work, (*Id.* ¶ 130). Such allegations support the reasonable

---

[9] Defendants refer to *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003) for support, but the *Andersons* plaintiffs were seeking to recover the costs associated with preparing an estimate for a bid that was ultimately not accepted. That case bears little resemblance to the facts here, where Plaintiffs showed up for weeks without pay to staff Defendants' Emergency Department.

inference that retention of benefits by Coshocton Hospital, Prime Defendants, and Reddy would be unjust.

Third, Defendants argue that Plaintiffs seek to recover an amount of damages that is inconsistent with the principles of quantum meruit, and that Count IV of the Amended Complaint should therefore be dismissed. Defendants refer to case law for the proposition that "[i]n quantum meruit, damages are the measure of the value of the plaintiff's services." (*See* MTD Br. at 19 (*citing Harley v. Dayton Computer Supply*, 106 F. Supp. 2d 976, 984 (S.D. Ohio 1999).) Plaintiffs do not dispute this general proposition for purposes of opposing this Motion. However, Defendants have not articulated why the reasonable value of Plaintiffs' services would not be the amounts that they had earned but were not paid. Regardless, a dispute over the proper amount recoverable cannot be the basis for dismissal of a claim at this early stage (or even at summary judgment), and Defendants have not cited any case dismissing on this basis.[10]

For these reasons, the Court should deny Defendants' Motion to Dismiss with respect to Plaintiffs' claims for unjust enrichment/quantum meruit.

## V. <u>CONCLUSION</u>

For the reasons stated above, dismissal of the Amended Complaint at the pleadings stage is inappropriate. Defendants' Motion should be denied.

**Dated:** March 5, 2026              Respectfully submitted,

                                      /s/Robert E. DeRose
                                      Robert E. DeRose (OH Bar No. 0055214)

---

[10] Defendants also argue that Plaintiffs should not be entitled to recover for breach of an agreement to which they were not a party. However, in *Reisenfeld & Co. v. The Network Group, Inc.* 277 F.3d 856 (6th Cir. 2002), the Sixth Circuit Court of Appeals, interpreting Ohio law stated that "a quasi-contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of consent." *Id.* at 860. Thus, in *Reisenfeld,* the Sixth Circuit concluded that a third party benefitted by a contract but not a party to the contract can indeed be sued on a theory of unjust enrichment.

Nickole K. Iula (OH Bar No. 0099895)
Anna R. Caplan (OH Bar No. 0104562)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300
Email: bderose@barkanmeizlish.com
niula@barkanmeizlish.com
acaplan@barkanmeizlish.com

Scott Goldshaw, Esquire
**GOLDSHAW GREENBLATT PIERCE LLC**
Two Penn Center, Suite 1230
1500 JFK Boulevard
Philadelphia, PA 19102
Phone: (215) 978 -9090
Facsimile: (215) 445-3629
Email: sgoldshaw@ggplawfirm.com
*Pro Hac Vice Pending*

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Robert E. DeRose, hereby certify that a true and correct copy of the foregoing *Plaintiffs'*

*Brief in Opposition to Defendants' Motion to Dismiss* was electronically filed with the Court on

March 5, 2026, and is available for viewing and downloading from the ECF system by all counsel

of record.

/s/ Robert E. DeRose
Robert E. DeRose
*Counsel for Plaintiffs*

18